UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

David J. Hauser,

Petitioner,

vs. REPORT AND RECOMMENDATION

Janet Reno and
Constance Reese,

Respondents. Civ. No. 00-396 (DSD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 1st day of March, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. §2241. The Petitioner has appeared pro se, and the Respondent has appeared by Michael W. Ward, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for Habeas Corpus be denied.

II. Factual and Procedural History

The Petitioner is presently serving a 46-month Federal prison term, which was imposed by the United States District Court for the District of Nebraska, on June 4, 1998. He was sentenced following

FILED MAR 01 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(11)

a conviction for possession with intent to distribute methamphetamine, in violation of Title 21 U.S.C. §841(a)(1).

On December 2, 1998, the Petitioner was transferred from the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone") to the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"), for participation in a Residential Drug Abuse Program ("RDAP"). See, Exhibit C to Toenges Decl. The RDAP program is provided by the Federal Bureau of Prisons ("BOP"), pursuant to Title 18 U.S.C. §3621(b). According to that Statute, the BOP is directed to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." Title 18 U.S.C. §3621(b). The program is "a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit set apart from the general prison population, lasting a minimum of 500 hours over a six to twelve-month period." 28 C.F.R. §550.56.

In order to qualify for participation in the RDAP, an inmate must meet all of the following criteria:

> (1) The inmate must have a verifiable documented drug abuse problem.
>
> (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.

> (3) The inmate must sign an agreement acknowledging his/her program responsibility.
>
> (4) Ordinarily, the inmate must be within thirty-six months of release.
>
> (5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. §550.56(a).

On September 20, 1998, Dr. Kent Cannon, Staff Psychologist and Drug Abuse Program Coordinator at FCI-Sandstone determined that the Petitioner was eligible to participate in the RDAP. See, Exhibit E to Toenges Decl. In March of 1999, the Petitioner began his participation in the RDAP, see, Exhibit F to Toenges Decl., and he successfully completed the residential component of the program on October 29, 1999. See, Exhibit G to Toenges Decl.

In order to give inmates an additional incentive to participate in the RDAP, Congress has authorized the BOP to grant sentence reductions of up to one year for those who successfully complete the program. This authority comes from Section 3621(e)(2)(B), which provides as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

In addition to the limitation that a prisoner be convicted of a non-violent offense, the BOP has promulgated Rules which further

Cir. 1998)(denying early release consideration due to inability to participate in a CCC program is a permissible exercise of discretion); McLean v. Crabtree, 173 F.3d 1176, 1181 (9th Cir. 1999), amended on other grounds, cert. denied, 528 U.S. 1086 (2000).[2]

Under BOP P.S. 5100.07, an inmate is assigned a PSF as a sex offender where his or her behavior in the current term of confinement, or his or her prior criminal history, clearly indicates certain elements related to illegal sexual activity. A conviction is not required for application of a PSF, and the PSF may be applied when an inmate has pled guilty to a lesser charge. So long as the PSI, or other official documentation, reports that the behavior occurred, BOP staff may assign a PSF sex offender classification to an inmate. The Program Statement further advises that a Sex Of-

---

[2]The Petitioner also argues that other BOP Regulations provide that transitional programming may occur in a BOP institution. It is true that 28 C.F.R. §550.56, which deals with the RDAP, instead of early release consideration, does indeed state that "[i]nmates enrolled in a residential drug abuse treatment program shall be required to complete subsequent transitional services programming in a community-based program and/or a Bureau institution." However, the BOP has since decided that "a community-based program (either in a CCC or on home confinement) is necessary to achieve successful results." Rublee v. Fleming, 160 F.3d 213, 215 (5th Cir. 1998). Consequently, the BOP Regulations were amended to provide for the necessity of treatment in a CCC, in order to be eligible for early release. See, 28 C.F.R. 550.58. For a recitation of the history of the Regulation, see, Ishu v. Wise, Report and Recommendation, Civ. No. 98-2593 (November 24, 1999). As has already been noted, a number of Courts have determined that the requirement is within the BOP's discretion. Thus, we do not find the Petitioner's argument persuasive.

fender PSF should not be assigned if the underlying case was dismissed or nolle prosequi, but should be assigned if the inmate pled to a lesser offense.

The Petitioner alleges that his classification as a sex offender should be removed because he pled "no contest" to a charge of a Probation Violation, which he asserts was related to a truancy and traffic violation. The Petitioner's PSI specifically states that the Petitioner was charged with 3rd Degree Assault on August 27, 1985, and, as a result, on September 18, 1985, he was placed on indefinite probation. The PSI goes on to state:

> Defendant was charged with threatening Jan Hauser in a menacing manner. On 12/30/85 an Affidavit of Probation Violation was filed due to defendant's failure to refrain from further unlawful conduct. Mr. Hauser had been charged in another juvenile case with sexually assaulting a 3 year old girl. In exchange for his "no contest" plea to the probation violation, the sexual assault case was dismissed.

Exhibit H to Toenges Decl.

In regard to the Sexual Assault charge, the PSI further states:

> This case reportedly involved the alleged sexual assault of a 3 year old girl. Charges were dismissed when the defendant plead "no contest" to the probation violation related to his 3rd Degree Assault adjudication. No information is available detailing the circumstances of the sexual assault.

Id.[3]

---

[3]There is also a charge, in September of 1986, regarding tru-

According to the Petitioner's PSI, the sexual assault was dismissed when he pled to the Probation Violation charge. Moreover, the information in the PSI is that the incident, which underlies the sexual assault, involved a three-year-old child.[4] On this Record, there is sufficient evidence to conclude that Petitioner's prior criminal history clearly substantiates that a sexual assault of a minor occurred. Although Petitioner was not convicted of a sex-related crime, the official documentation does clearly reveal that the elements related to the illegal sexual activity, which merit the classification as a PSF Sex Offender, occurred. The Petitioner

---

[3](...continued)
ancy.

[4]The Petitioner has provided evidence of his attempts to obtain a copy of his record regarding the sexual assault, and has represented that he has been unable to do so, because the records are no longer available. See, Exhibit F to Petition for Habeas Corpus (letter from U.S. Probation Office, District of Nebraska, dated February 19, 1999). He also provided a letter from his sentencing Judge, the Honorable Joseph F. Bataillon, United States District Court for the District of Nebraska, stating that "[a]fter diligent effort, Craig Saigh, Chief U.S. Probation Officer, has advised me that no criminal or Court records exist. All that is known is that the sexual assault charge was ultimately dismissed." See, Exhibit D to Petition for Habeas Corpus (letter dated September 1, 1999). However, as the Petitioner's exhibits show, the information was no longer available in February of 1999, see, Exhibit F to Petition for Habeas Corpus, and consequently, was not available for Judge Bataillon in September of 1999. Thus, even though the Petitioner has made this evidentiary showing, we cannot responsibly conclude, based on this evidence, that the PSI report, which was authored in mid-1998, is somehow inaccurate.

According to the Petitioner's PSI, the sexual assault was dismissed when he pled to the Probation Violation charge. Moreover, the information in the PSI is that the incident, which underlies the sexual assault, involved a three-year-old child.[4] On this Record, there is sufficient evidence to conclude that Petitioner's prior criminal history clearly substantiates that a sexual assault of a minor occurred. Although Petitioner was not convicted of a sex-related crime, the official documentation does clearly reveal that the elements related to the illegal sexual activity, which merit the classification as a PSF Sex Offender, occurred. The Petitioner

---

[3](...continued)
ancy.

[4]The Petitioner has provided evidence of his attempts to obtain a copy of his record regarding the sexual assault, and has represented that he has been unable to do so, because the records are no longer available. See, Exhibit F to Petition for Habeas Corpus (letter from U.S. Probation Office, District of Nebraska, dated February 19, 1999). He also provided a letter from his sentencing Judge, the Honorable Joseph F. Bataillon, United States District Court for the District of Nebraska, stating that "[a]fter diligent effort, Craig Saigh, Chief U.S. Probation Officer, has advised me that no criminal or Court records exist. All that is known is that the sexual assault charge was ultimately dismissed." See, Exhibit D to Petition for Habeas Corpus (letter dated September 1, 1999). However, as the Petitioner's exhibits show, the information was no longer available in February of 1999, see, Exhibit F to Petition for Habeas Corpus, and consequently, was not available for Judge Bataillon in September of 1999. Thus, even though the Petitioner has made this evidentiary showing, we cannot responsibly not conclude, based on this evidence, that the PSI report, which was authored in mid-1998, is somehow inaccurate.

was charged with a sexual assault. However, since the Petitioner was on probation, due to the 3rd Degree Assault in August of 1985, he was allowed to plead "no contest" to the Probation Violation, and the sexual assault charge was dismissed. The underlying incident, which resulted in the Probation Violation, though, was the sexual assault. Accordingly, classification as a PSF Sex Offender was appropriate.

Thus, since the Sexual Offender PSF was properly imposed on the Petitioner, he is ineligible for placement in a CCC. Moreover, since he is ineligible for placement in a CCC, he is ineligible for early release consideration, under 28 C.F.R. §550.58(a)(v). Thus, the Petitioner was properly denied early release, and therefore, we recommend that his Petition for Habeas Corpus be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 16, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 16, 2001,** unless all interested parties stipu-late that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.